NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**WALKER DIGITAL, LLC,**
*Plaintiff-Appellant,*

**v.**

**EXPEDIA, INC.,**
*Defendant-Appellee,*

AND

**AMAZON.COM, INC.,**
*Defendant-Appellee,*

AND

**AMERICAN AIRLINES, INC.,**
*Defendant-Appellee,*

AND

**ZAPPOS.COM, INC.,**
*Defendant-Appellee.*

---

2013-1520, 2014-1080

---

Appeals from the United States District Court for the District of Delaware in No. 11-CV-0313, Judge Sue L. Robinson.

-------------------------------------------------

**WALKER DIGITAL, LLC,**
*Plaintiff-Appellant,*

v.

**AMAZON.COM, INC.,**
*Defendant-Appellee.*

————————————————

2013-1521, 2014-1077

————————————————

Appeals from the United States District Court for the District of Delaware in No. 12-CV-0140, Judge Sue L. Robinson.

-------------------------------------------------

**WALKER DIGITAL, LLC,**
*Plaintiff-Appellant,*

v.

**BARNES & NOBLE, INC.**
*Defendant-Appellee.*

————————————————

2013-1522, 2014-1090

————————————————

Appeals from the United States District Court for the District of Delaware in No. 12-CV-0141, Judge Sue L. Robinson.

-------------------------------------------------

**WALKER DIGITAL, LLC,**
*Plaintiff-Appellant,*

v.

**EXPEDIA, INC.**
*Defendant-Appellee.*

———————————————

2013-1523, 2014-1081

———————————————

Appeals from the United States District Court for the District of Delaware in No. 12-CV-0142, Judge Sue L. Robinson.

———————————————

Decided: December 30, 2014

———————————————

MICHAEL CARDOZO, Proskauer Rose LLP, of New York, New York, argued for plaintiff-appellant. On the brief were ANTHONY G. SIMON, BENJAMIN R. ASKEW, MICHAEL P. KELLA, STEPHANIE H. TO, and TIMOTHY D. KRIEGER, The Simon Law Firm, P.C., of St. Louis, Missouri, TIMOTHY E. GROCHOCINSKI, Innovalaw, P.C., of Orland Park, Illinois, and MARC A. FENSTER and BENJAMIN T. WANG, Russ, August & Kabat, of Los Angeles, California.

JEFFREY S. LOVE, Klarquist Sparkman LLP, of Portland, Oregon, argued for all defendants-appellees. With him on the brief for Amazon.com Inc. and Zappos.com, Inc. were KLAUS H. HAMM, KRISTEN L. REICHENBACH, PHILIP WARRICK, and GARTH A. WINN. For defendant-appellee Expedia, Inc., were AHMED J. DAVIS and LINHONG ZHANG, Fish & Richardson, P.C., of Washington, DC. For defendant-appellee American Airlines, was JOHN B. CAMPBELL, McKool Smith, P.C., of Austin, Texas. For defendant-appellee Expedia, was NEIL J. MCNABNAY, Fish

4                    WALKER DIGITAL, LLC v. EXPEDIA, INC.

& Richardson, P.C., of Dallas, Texas. For defendant-
appellee Barnes & Noble, Inc. were PHILIP A. ROVNER
and JONATHAN A. CHOA, Potter Anderson & Corroon LLP,
of Wilmington, Delaware.

-------------------

Before PROST, *Chief
Judge,* NEWMAN and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.

Dissenting opinion filed by *Circuit Judge* WALLACH.

PROST, *Chief Judge.*

This consolidated appeal pertains to five actions for
patent infringement brought by Walker Digital ("Walker")
against Expedia, Inc., Amazon.com, Inc., American Air-
lines, Inc., Zappos, Inc., and Barnes & Noble, Inc. (collec-
tively, "appellees"). Walker appeals from the United
States District Court for the District of Delaware's order
dismissing with prejudice Walker's complaints for lack of
standing. The district court found that Walker lacked
standing because it had transferred its interest in all of
the patents at issue pursuant to a December 9, 2011
Confidential Settlement and License Agreement between
eBay, Inc. and Walker ("Settlement Agreement").[1] For
the reasons stated below, we affirm.

BACKGROUND

On April 11, 2011, Walker filed suit in case number
11-CV-313, against ten defendants, including eBay,
alleging infringement of U.S. Patent Nos. 7,831,470 ("470

-------------------

[1]   Although the district court placed a protective or-
der preventing discussion of certain factual information
related to the Settlement Agreement, this opinion refers
only to facts that were disclosed in the district court's
opinion and other public proceedings below.

patent") and 7,827,056 ("'056 patent"). Walker also filed case number 11-CV-315 against numerous defendants, including eBay, alleging infringement of U.S. Patent No. 7,236,942 ("'942 patent"). Later, on February 7, 2012, Walker filed against Amazon.com, Inc. in case number 12-CV-140, against Barnes & Noble, Inc. in case number 12-CV-141, and against Expedia, Inc. in case number 12-CV-142. In case numbers 12-CV-140, 12-CV-141, and 12-CV-142, Walker alleged infringement of U.S. Patent No. 8,112,359 ("'359 patent"). The '470, '056, '942, and '359 patents share a number of similar parents, but can all be traced back to U.S. Patent No. 6,694,300 ("'300 patent").[2]

In order to settle case number 11-CV-315, Walker and eBay executed the Settlement Agreement at issue here. In addition to an irrevocable, nonexclusive license to Walker's entire patent portfolio, the agreement also transferred ownership of certain patent rights from Walker to eBay. The first paragraph of the Settlement Agreement's Patent Purchase Terms provides:

> **1.1 Purchase and Sale.** Walker Digital LLC (**"Seller"** for purposes of this Exhibit A) hereby conveys, assigns, and transfers to eBay Inc. (**"Purchaser"** for purposes of this Exhibit A), and Purchaser hereby accepts, all right title, and interest in and to the patents and patent applications described on **Schedule A** (collectively, the **"Transferred Patents"**). The Transferred Pa-

---

[2]   Specifically, the '470 patent is a continuation-in-part of the '300 patent, and the '056 patent is a continuation of the '470 patent. The '359 patent is a continuation of U.S. Patent No. 7,856,379, which is a continuation of the '942 patent, which is a continuation-in-part of the '300 patent. The '359 patent is also a continuation-in-part of the U.S. Patent No. 6,405,174, which in turn is a continuation-in-part of the '300 patent.

tents include all counterparts, continuations, con-
tinuations-in-part, divisionals, reissues, reexami-
nations, and extensions thereof, and all current,
future, or abandoned patents and patent applica-
tions (whether filed by Seller or Purchaser and
whether filed before, on, or after the Effective
Date) claiming priority from, derived from, or re-
lated to any of the foregoing in any jurisdiction.
The sale of the Transferred Patents to Purchaser
includes the transfer of (i) the right to sue and re-
cover damages for past, present, and/or future in-
fringement; (ii) the right to injunctive relief and;
(iii) any and all causes of action relating to any of
the inventions or discoveries described in the
Transferred Patents.  Seller reserves no rights
whatsoever in the Transferred Patents.

*Walker Digital, LLC v. Expedia, Inc.*, 950 F. Supp. 2d 729,
732 (D. Del. 2013).  Schedule A of the Agreement does not
list the '056, '470, '942, or '359 patents.  However, Sched-
ule A does include, inter alia, the '300 patent, and other
patents of which the patents-at-issue are continuations or
continuations-in-part.

  Following execution of the Settlement Agreement and
dismissal of all claims against eBay in the -313 and -315
cases, the remaining appellees moved to dismiss Walker's
complaints against them in the -313, -315, -140, -141, and
-142 cases.  The appellees argued that because the Patent
Purchase Terms provide that the "Transferred Patents"
include "the patents and patent applications described on
Schedule A," as well as "all counterparts, continuations,
continuations-in-part, divisionals, reissues, reexamina-
tions, and extensions thereof," *Walker Digital*, 950 F.
Supp. 2d at 732, the Settlement Agreement transferred
ownership of the four patents-in-suit—all continuations or
continuations-in-part of patents included in Schedule A—
to eBay.  The appellees submitted that, having trans-

ferred ownership of the patents-in-suit, Walker lost standing to sue.

In its response to appellees' motion, Walker included a letter from eBay, which stated in its entirety: "This confirms eBay, Inc. is not the owner of U.S. Patent Nos. 7,831,470 (09/219267) and 7,827,056 (11/423481). eBay Inc. reserves all rights and no other rights, express or implied, are granted." *Walker Digital*, 950 F. Supp. 2d at 737. The district court concluded that the letter, which it noted was not signed under oath and did not address all the patents-in-suit, was insufficient to answer the question of ownership. The district court then granted a temporary stay in a February 7, 2013 hearing in order to allow Walker to obtain a formal declaration from eBay. Walker's subsequent response on March 4 included a signed declaration from Anup Tikku, eBay's Senior Patent Counsel, who confirmed that the parties (Walker Digital and eBay) did not intend for Walker Digital to assign the '470 patent, the '056 patent, or the '942 patent to eBay in connection with the License Agreement. *See id.*

The district court found that the broad granting language of the Settlement Agreement was unambiguous, and overcame the "equivocal parol evidence" of the parties' intent, which the court noted still had not addressed the '359 patent. The district court thus granted appellees' motion to dismiss for lack of standing on June 19, 2013. The decision did not specify whether the dismissal was with prejudice. The appellees filed a motion on July 12 under Rule 59(e) of the Federal Rules of Appellate Procedure to clarify that the judgment was with prejudice. On July 19, Walker filed its notices of appeal. In response to appellees' motion, the district court on October 25 modified its holding to dismiss the case with prejudice, reasoning that "[Walker] was offered multiple opportunities to cure the standing defect," and "has offered no evidence that it has a plan to cure the standing defect" apart from engaging in continued discussions with eBay regarding

ownership of the patents-in-suit. *Walker Digital, LLC v. Expedia, Inc.*, No. 1:11-CV-313, 2013 WL 5799912, at *2 (D. Del. Oct. 25, 2013) ("*Order*"). Walker filed a new notice of appeal, contesting both the judge's decision with respect to standing and, in the alternative, the dismissal of its complaint with prejudice.

DISCUSSION

I. Standard of Review

Standing under Article III, section 2, clause 1 of the United States Constitution is reviewable at all stages of a proceeding, but it is a requirement that must be satisfied when the case is filed or brought. *See Friends of the Earth, Inc. v. LaidLaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). Mootness, by contrast, while sometimes colloquially referred to as standing, is the requirement, also under Article III, that the plaintiff have a personal stake in the case or controversy throughout the action. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 (1997). We need not decide here whether this case presents an issue of standing or mootness; regardless of the correct nomenclature, it is clear that if Walker currently has no interest in the patents it is asserting, it may not continue its case. *See Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005); *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). We review de novo the question of whether there exists a case or controversy under Article III. *See Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1300 (Fed. Cir. 2010).

Walker also appeals the district court's dismissal with prejudice. In determining whether a dismissal should have been with or without prejudice, this court applies the law of the pertinent regional circuit. *Sicom*, 427 F.3d at 975. In the Third Circuit, dismissal with prejudice is reviewed under an abuse of discretion standard. *Id.*

Under this deferential standard, the district court's holding must be upheld unless no reasonable person would adopt the court's view. *In re VistaCare Grp.*, 678 F.3d 218, 232 (3d Cir. 2012) (quoting *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010)).

Contract interpretation is a question of law that this court reviews de novo. *SUFI Network Servs., Inc. v. United States*, 755 F.3d 1305, 1321 (Fed. Cir. 2014) (quoting *Mass. Bay Transp. Auth. v. United States*, 254 F.3d 1367, 1372 (Fed. Cir. 2001)). We apply the law of the state of Delaware in interpreting the Settlement Agreement language. *See Thatcher v. Kohl's Dep't Stores, Inc.*, 397 F.3d 1370, 1373 (Fed. Cir. 2005) (quoting *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999)); *Regents of Univ. of Mex. v. Knight*, 321 F.3d 1111, 1118 (Fed. Cir. 2003) ("State law governs contractual obligations and transfers of property rights, including those relating to patents.").

## II. Ownership of the Patents-in-Suit

The Settlement Agreement provides that Walker "reserves no rights whatsoever in the Transferred Patents." *Walker Digital*, 950 F. Supp. 2d at 732. Therefore, in order to determine whether Walker satisfies Article III's case or controversy requirement, we interpret the Settlement Agreement language to determine whether the patents-in-suit were included in the category of Transferred Patents.

The Agreement's Patent Purchase Terms have only one reasonable interpretation. The first sentence of Section 1.1 states that "the Transferred Patents" include the patents and patent applications described in Schedule A; the second sentence further modifies the set of Transferred Patents to include "all counterparts, continuations, [and] continuations-in-part . . . thereof . . . ." *Walker Digital*, 950 F. Supp. 2d at 732. It is undisputed that the '056, '470, '942, and '359 patents are continuations or

continuations-in-part of patents included in Schedule A. Therefore, the only reasonable interpretation of this language is that the patents-in-suit were included within the category of the Transferred Patents.

Walker argues the language in the Settlement Agreement is reasonably susceptible to an alternative interpretation.  Under Walker's proposed reading, only the first sentence of Section 1.1 grants rights to eBay (specifically, a grant of the twenty-six patents and applications in Schedule A), and the second sentence of Section 1.1 is simply "an inaccurate declarative statement," describing what Schedule A "includes" without actively modifying its scope.  However, subsequent language in Section 1.1 clearly includes "patent applications . . . filed . . . after the Effective Date" of the Agreement. *Walker Digital*, 950 F. Supp. 2d at 732.  Inaccurate or not, there is no way for the language following the first sentence of Section 1.1 to be a mere description of the present contents of Schedule A, because it clearly comprehends patent applications filed in the future.  Courts will not read a contract to render a provision or term meaningless or illusory.  Restatement (Second) of Contracts § 203(a) (1981); *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).  Therefore, Walker's proposed interpretation is not reasonable.[3]

---

[3]    Walker also argues that given the large number of patents that are descendant from the patents listed in Schedule A, "no reasonable party to the [Agreement] would have interpreted the Patent Purchase Terms as giving away this many additional patents/applications," and therefore the Settlement Agreement as a whole is ambiguous.  Even if it may be true that no reasonable party would have *agreed* to such a broad grant had they read the provision thoroughly, this argument fails to

Walker alternatively argues that the Settlement Agreement as a whole is ambiguous. The traditional rule is that ambiguity exists when, within the four corners of an agreement, the provisions in controversy are susceptible to more than one reasonable interpretation. *See GMG*, 36 A.3d at 780; *City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993). Additionally, some cases have held that a party may establish ambiguity if an agreement's provisions necessarily conflict with one another. *See Cordis Corp. v. Boston Scientific Corp.*, 868 F. Supp. 2d 342, 352 (D. Del. 2012) *aff'd in part, vacated in part*, 504 F. App'x 922 (Fed. Cir. 2013) ("inconsistent contractual provisions may create ambiguity in a contract"); *Empire of Am. Relocation Servs., Inc. v. Commercial Credit Co.*, 551 A.2d 433, 436 (Del. 1988) ("the terms of the amended agreement were ambiguous because they were, in fact, in conflict").

Where a contract is ambiguous, the court must look beyond the language of the contract to ascertain the parties' intentions. *GMG Capital Invs., LLC v. Athenian Venture Partners I*, 36 A.3d 776, 780 (Del. 2012). However, the Delaware Supreme Court has held repeatedly that "[e]xtrinsic evidence is not to be used to interpret contract language where that language is 'plain and clear on its face.'" *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 289 (Del. 2001) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997)); *Halliburton Co. v. Highlands Ins. Grp.*, 811 A.2d 277, 280 n.9 (Del. 2002); *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1379 (Fed. Cir. 2004) (collecting cases applying the parol evidence rule).[4]

---

establish that the granting language itself is subject to more than one reasonable interpretation.

[4]    Appellees note that the Settlement Agreement contains a standard merger clause. Under Delaware law,

Walker argues that the Settlement Agreement is ambiguous because the grant in Section 1.1 of the continuations-in-part is inconsistent with the structure of Schedule A. *See Cordis Corp.*, 868 F. Supp. 2d at 352 ("inconsistent contractual provisions may create ambiguity in a contract."). Walker notes that some of the patents listed in Schedule A are relatives of other patents also included in Schedule A. According to Walker's argument, if the parties had wished to transfer all related patents and applications of the ones listed in Schedule A, the parties would have listed only the three parents of each and every patent involved. Instead, Schedule A includes a number of parent patents, and *some, but not all* of their children. If, as appellees argue, the second sentence of Section 1.1 grants *all* children of the patents and applications listed in Schedule A, Walker argues that there would be no reason to list some children in Schedule A but not others. Walker argues that the district court's interpretation therefore renders many of Schedule A's listings redundant. However, the genealogies of each of the patents listed in Schedule A are not described anywhere within the four corners of the Settlement Agreement. Therefore, a person considering only the intrinsic evidence within the Settlement Agreement would not detect any redundancy. We may not rely on extrinsic evidence such as the history of a patent application to establish an

---

a merger clause further bars consideration of parol evidence. *See, e.g., RTN Investors, LLC v. RETN, LLC,* No. 08C-04-007-JRJ, 2011 WL 862268, at *13 n. 204 (Del. Super. Ct. Feb. 10, 2011); *Hyansky v. Vietri,* No. 14645-NC, 2003 WL 21976031, at *4 (Del. Ch. Mar. 28, 2003). However, a merger clause may be set aside if ambiguous terms in the contract exist. *Oglesby v. Conover*, No. K10C-08-017-RBY, 2011 WL 3568276, at *3 (Del. Super. Ct. May 16, 2011).

ambiguity when the language transferring it is clear. *O'Brien*, 785 A.2d at 289.

Walker also argues that the Settlement Agreement is ambiguous because under Section 1.1, the parties would have transferred patents inconsistent with the Agreement's warranty provision, which guarantees that none of the Transferred Patents were the subject of pending litigation. The fact that the '056, '470, and '942 patents were involved in litigation at the time of the Settlement Agreement's execution is parol evidence, and thus cannot be used to establish an ambiguity. *Id.* Even if this were not the case, this evidence at best establishes inconsistency between the Settlement Agreement terms and what may have been a party or both parties' knowledge, intent, or behavior. The fact that a party may not be in compliance with a provision in an agreement does not, however, establish internal inconsistency within the four corners of the agreement itself.[5]

Lastly, Walker relies on the Settlement Agreement's drafting history and the parties' behavior after its execution to show ambiguity. This remaining evidence, which includes previous drafts of the Settlement Agreement and emails between the parties, may well establish the intent of the parties was not to transfer all the patents-in-suit. Nevertheless, under Delaware law, when a contract's language is unambiguous, extrinsic evidence may not be used to vary the terms of the contract or to create an ambiguity. *O'Brien*, 785 A.2d at 289; *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *Osborn,* 991 A.2d at 1159 (Delaware adheres to the "objective" theory of contracts). Because we conclude that the Settlement Agreement language is clear and unam-

---

[5]     The '359 patent was not involved in litigation at the time the Agreement was executed.

biguous, we decline to review Walker's extrinsic evidence here.

### III. Dismissal with Prejudice

Walker's appeal of the district court's dismissal with prejudice is premised on two grounds: first, that the district court lacked jurisdiction to modify its dismissal after Walker had filed its first timely notice of appeal, and second, that the district court abused its discretion by refusing to allow Walker to cure its Article III defect and dismissing with prejudice. We find both grounds unavailing.

First, the district court did indeed have jurisdiction to modify its order and dismiss the case with prejudice as moot. The filing of a valid notice of appeal does have jurisdictional significance, insofar as it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). However, a notice of appeal filed while a Rule 59(e) motion is pending is ineffective until the motion is disposed of. Fed. R. App. P. 4(a)(4)(B)(i); 4(a)(4)(A)(iv); *Kraft, Inc. v. United States*, 85 F.3d 602, 604 (Fed. Cir. 1996). Appellees filed a motion on July 12, 2013 to amend the judgment under 59(e). Later, on July 19, Walker filed its notices of appeal. The district court still retained jurisdiction to decide appellees' 59(e) motion, and Walker's notice of appeal was therefore ineffective until the district court disposed of said motion on October 25. Walker argues that appellees' Rule 59(e) motion was invalid because there was no judgment at the time that could have been amended given the district court's dismissal for lack of Article III case or controversy. However, for reasons already stated, the district court still

retained jurisdiction to amend its dismissal pursuant to Appellees' Rule 59(e) motion.[6]

Walker also argues that under Third Circuit precedent, courts generally disfavor dismissing an action with prejudice based on lack of standing, particularly when the defect is curable. *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1333 (Fed. Cir. 2009). However, this presumption is not absolute, particularly when the plaintiff has been given ample opportunities to cure the defect but has failed. *See Sicom*, 427 F.3d at 980 (affirming a dismissal with prejudice under Third Circuit law because "Sicom already had a chance to cure the [standing] defect and failed"); *accord Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998) ("The district court correctly dismissed the infringement claim with prejudice because Textile had its chance to show standing and failed."); *Frempong v. Nat'l City Bank of Ind.*, 452 F. App'x 167, 171 (3d Cir. 2011) (affirming a dismissal for lack of standing with prejudice when the plaintiff had both notice and a full and fair opportunity to contest or cure its standing defect).

We conclude that the district court did not abuse its discretion when it imposed a dismissal with prejudice in this case. Walker had multiple opportunities to cure its Article III defect. After concluding that the letter from eBay, which was not made under oath and did not ad-

---

[6]   Appellees also argue that Walker could not file a notice of appeal until the district court had ruled on its counterclaims. *See Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003)) ("[A] judgment that does not dispose of pending counterclaims is not a final judgment."). However, the district court's order explains that it disposed of the counterclaims as moot at the time it dismissed Walker for lack of an Article III case or controversy. *See Order,* 2013 WL 5799912, at *1.

dress all of the patents-in-suit, was insufficient to answer the question of ownership, the district court ordered a month-long stay on all of Walker's cases in order to produce some legally binding affirmation of eBay's position with respect to the Settlement Agreement and its ownership interest. The declaration provided by Walker of Mr. Tikku was also insufficient. At any time during the litigation, Walker could have received an assignment of the patents back from eBay, or if necessary, filed a suit against eBay seeking reformation of the Settlement Agreement.[7] Instead, Walker offered no evidence that it had a plan to cure its Article III defect, stating only that it "has been and currently is engaged in continued discussions with eBay regarding ownership of the patents-in-suit." *Order*, 2013 WL 5799912, at *2. Under these circumstances, the district court did not abuse its discretion when it dismissed with prejudice Walker's claims against appellees.

CONCLUSION

For the aforementioned reasons, we affirm the judgment of the district court dismissing with prejudice Walker's claims related to the '470, '056, '942, and '359 patents.

**AFFIRMED**

---

[7]    Under the doctrine of scrivener's error as established in the Third Circuit, "the mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is 'clear, precise, convincing and of the most satisfactory character' that a mistake has occurred and that the mistake does not reflect the intent of the parties." *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Murata Erie N. Am., Inc.*, 980 F.2d 889, 907 (3d Cir. 1992).

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————————

**WALKER DIGITAL, LLC,**
*Plaintiff-Appellant,*

**v.**

**EXPEDIA, INC.,**
*Defendant-Appellee,*

AND

**AMAZON.COM, INC.,**
*Defendant-Appellee,*

AND

**AMERICAN AIRLINES, INC.,**
*Defendant-Appellee,*

*AND*

**ZAPPOS.COM, INC.,**
*Defendant-Appellee.*

———————————————

2013-1520, 2014-1080

———————————————

Appeals from the United States District Court for the District of Delaware in No. 11-CV-313-SLR, Judge Sue L. Robinson.

--------------------------------------------------

**WALKER DIGITAL, LLC,**
*Plaintiff-Appellant,*

**v.**

**AMAZON.COM, INC.,**
*Defendant-Appellee.*

————————————————

2013-1521, 2014-1077

————————————————

Appeals from the United States District Court for the District of Delaware in No. 12-CV-140-SLR, Judge Sue L. Robinson.

——————————————————————

WALKER DIGITAL, LLC,
*Plaintiff-Appellant,*

v.

BARNES & NOBLE, INC.
*Defendant-Appellee.*

————————————————

2013-1522, 2014-1080

————————————————

Appeals from the United States District Court for the District of Delaware in No. 12-CV-141-SLR, Judge Sue L. Robinson.

——————————————————————

WALKER DIGITAL, LLC,
*Plaintiff-Appellant,*

v.

EXPEDIA, INC.
*Defendant-Appellee.*

———————————

2013-1523, 2014-1081
———————————

*WALLACH, Circuit Judge, dissenting.*

The majority holds the contract language in the eBay Settlement Agreement is "clear and unambiguous" in transferring "all counterparts, continuations, [and] continuations-in-part" of those patents listed on Schedule A. Maj. Op. at 14. Consequently, the majority "decline[s] to review Walker's extrinsic evidence." *Id.* at 13. Because conflicting clauses in the Settlement Agreement create ambiguity regarding the parties' intent, I respectfully dissent.

The majority correctly declines to label the "the second sentence of Section 1.1" as "an inaccurate declarative statement," as Walker proposes. Maj. Op. at 10. As the majority notes, "[c]ourts will not read a contract to render a provision or term meaningless or illusory." *Id.* (citing Restatement (second) of Contracts, § 203(a) (1981) and *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)). However, contrary to the majority's view, Section 1.1's plain language conflicts with other provisions in the Agreement, rendering the Agreement ambiguous as to whether unlisted patents (including the '359, '056, '942, and '470 patents ("the patents-in-suit")) related to the listings on Schedule A, were transferred to eBay.

### I. The Structure of the Settlement Agreement Creates Ambiguity

As an initial matter, ambiguity is created by the structure of the Agreement; neither "Schedule A" nor "Exhibit A" is referenced anywhere in what is titled the "Settlement Agreement." The district court acknowledged this, noting in its opinion that "[i]n addition to Appendix B, *but neither mentioned in the body of the Settlement Agreement nor separately executed*, is a document labeled 'EXHIBIT A, PATENT PURCHASE TERMS.'" J.A. 5 (emphasis added). [[Concessions were made.]]

"A contract can be created by reference to the terms of another instrument if a reading of all documents together gives evidence of the parties' intention and the other terms are clearly identified." *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450 454 (Del. 1982). Here, as both parties and the trial court acknowledge, neither Schedule A nor Exhibit A is referenced in the Settlement Agreement. Intrinsic ambiguity necessarily exists.

### II. The Second Sentence of Section 1.1 Renders Some Listings on Schedule A Redundant

The majority rejects Walker's argument that the district court's interpretation renders some of Schedule A's listings redundant, thereby creating ambiguity within the Agreement. The majority reasons "the genealogies of each of the patents listed in Schedule A are not described anywhere within the four corners of the Settlement Agreement. Therefore, a person considering only the intrinsic evidence within the Settlement Agreement would not detect any redundancy." Maj. Op. at 12.

[[There is redundancy in Schedule A.]]

"Delaware courts have consistently held that an interpretation that gives effect to each term of an agreement is preferable to any interpretation that would

result in a conclusion that some terms are *uselessly repetitive.*" *O'Brien v. Progressive N. Ins. Co.,* 785 A.2d 281, 287 (Del. 2001) (emphasis added); *see also Intel Corp. v. Am. Guarantee & Liab. Co.,* 51 A.3d 442, 451 (Del. 2012) ("[N]o part of an agreement should be rendered superfluous."); *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.,* No. 5886VCP, 2013 WL 3934992, at *13 (Del. Ch. July 24, 2013). Section 1.1's broad grant of "all counterparts, continuations, continuations-in-part, divisionals, reissues, reexaminations, and extensions thereof" conflicts with the parties' decision to list twenty-six patents rather than only the three grandparent applications, to which all other patents/applications, including the patents-in-suit, claim priority.

[[Concessions were made.]] It is illogical to list twenty-three divisionals and continuations-in-parts, but not the several hundred others that Section 1.1 plainly transfers, necessarily creating ambiguity regarding what was transferred.

Furthermore, as explained by the majority, the Settlement Agreement gives eBay a nonexclusive license to all the patents listed in Appendix B. [[Similarities.]] That some patents appear on both creates ambiguity because it is irrational that a party would pay to both license a patent and gain an assignment of the same.

III. Section 1.1 Conflicts with the Warranty Clause

The Majority also says the warranty clause in the Settlement Agreement does not create ambiguity when reading Section 1.1 as transferring all related patents to those on Schedule A. Specifically, the Majority concludes:

> The fact that the '056, '470, and '942 patents were involved in litigation at the time of the Settlement Agreement's execution is parol evidence, and thus cannot be used to establish an ambiguity. Even if this were not the case, this evidence at best

establishes inconsistency between the Settlement Agreement terms and what may have been a party or both parties' knowledge, intent, or behavior. The fact that a party may not be in compliance with a provision in an agreement does not, however, establish internal inconsistency within the four corners of the agreement itself.

Maj. Op. at 13 (citation and footnote omitted). "[W]hile unambiguous contract language is generally interpreted without resort to extrinsic evidence, *it need not be interpreted in a vacuum*." 11 Williston on Contracts § 30:6 (4th ed. 2011); *see also E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985) ("In this case, we are dealing with *what first appears* to be two independent contracts. Indeed, *were each contract to be considered in a vacuum*, each would constitute a permissible exercise of Shell's rights under the License Agreement. . . . *However, because of the manner* in which the parties entered into the Toll Conversion Agreement and the Purchase and Sale Agreement, it is obvious that these Agreements cannot be considered apart from one another and must be read together as two parts of the same business transaction.") (emphases added). The majority's conclusion violates this principle.

A court's consideration of the circumstances surrounding execution of a contract in order to determine the parties' intent does not necessarily implicate the parol evidence rule. *See GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. 5571-CS, 2011 WL 2682898, at *n.88 (Del. Ch. July 11, 2011) (quoting 11 Williston on Contracts § 32:7 (4th ed. 2011)) ("[T]he circumstances surrounding the execution of a contract may always be shown and are always relevant to a determination of what the parties intended by the words they chose. . . . Some courts have held that the former rule runs afoul of the parol evidence rule . . . . These decisions in truth, reflect a misunderstanding of the parol evidence rule. . . . [T]he

term ['surrounding circumstances'] refers to the commercial or other setting in which the contract was negotiated and other *objectively determinable factors that give a context to the transaction between the parties*.") (emphasis added).

Accordingly, "[a] court must accept and apply the plain meaning of an unambiguous term *in the context of the contract language and circumstances*, insofar as the parties themselves would have agreed ex ante." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006) (emphasis added); *see also Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*, No. 5688-VCS, 2011 WL 549163, *n.24 (Del. Ch. Feb. 16, 2011) ("Although recourse to extrinsic evidence is generally not appropriate in interpreting an unambiguous contract, that does not mean that the court must be blind to the general business context in which a given contract was negotiated."). The majority's refusal to consider the pending litigation, the very circumstance that led to the creation of the Settlement Agreement, runs afoul of this well-settled principle. Section 1.1's assignment of all continuations, continuations-in-part, and related patents/applications to those listed in Schedule A conflicts with the no-pending litigation warranty because the -313 and -315 cases were pending when the Settlement Agreement was executed. *See, e.g.*, J.A. 386, 734. This inconsistency creates ambiguity.

Moreover, "[a] court must interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions of the instrument when read as a whole." *Counsel of the Dorset Condo. Apartments v. Gordon*, 801 A.2d 1, 7 (Del. 2002); *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 831 (Del. Ch. 2007) (A "canon of construction . . . requires harmonization of seemingly conflicting contract provisions"); *GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. 5571-CS, 2012 WL

2356489, at *4 (Del. Ch. June 21, 2012) ("[A] court will prefer an interpretation that harmonizes the provisions in a contract as opposed to one that creates an inconsistency or surplusage.").   By disregarding the conflict between the warranty clause and the pending litigation, the majority fails to give effects to all provisions, nullifying the warranty clause.

The district court itself acknowledged "the broad granting language is inconsistent with plaintiff's warranty that none of the Transferred Patents were [the] subject of litigation," J.A. 13, but ultimately "declin[ed] to elevate a standard warranty clause above unambiguous granting language—the clear purpose of the document," J.A. 14.   It is impossible to reconcile the court's simultaneous recognition of conflicting terms and its insistence on unambiguous contract language.   *Cordis Corp. v. Boston Scientific Corp.*, 868 F. Supp. 2d 342, 352 (D. Del. 2012) *aff'd in part, vacated in part on other grounds,* 504 F. App'x 922 (Fed. Cir. 2013) ("[i]nconsistent contractual provisions may create ambiguity in a contract.").

## IV. The Majority's Interpretation Conflicts with the Overall Plan of the Settlement Agreement

"[T]he meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan." *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC,* 55 A.3d 330, 334–335 (Del. 2012) (internal quotation marks and citation omitted).   Rather, "[a] court must interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions of the instrument when read as a whole." *Counsel of the Dorset Condo.*, 801 at 7; *see also Delta & Pine Land Co. v. Monsanto Co.,* C.A. No. 1970–N, 2006 WL 1510417, at *4 (Del. Ch. May 24, 2006) ("It is, of course, a familiar principle that contracts

must be interpreted in a manner that does not render any provision illusory or meaningless.") (internal quotation marks and citation omitted).

The majority elevates Section 1.1 over all other clauses in the Agreement, rendering listings on Schedule A redundant, the warranty clause meaningless, and the parties' clear intent irrelevant. An interpretation with such effects *cannot* be the "only reasonable interpretation." Maj. Op. at 9.

"An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract." *Osborn*, 991 A.2d at 1160. Reading the Section 1.1 as the district court and

majority do leads to an absurd result, a fact the district court itself acknowledged.[1] *See* J.A. 3425.

---

[1]        In entirety, the court stated:

It strikes me that . . . defendants' interpretations are leading us to a *ludicrous result*, and by that I mean the following. As I understand it, the parties to the contract at issue have no dispute and agree that ownership of the patents-in-suit were never transferred to eBay and that they are still owned by Walker Digital. The movants, who are non-parties to the contract, are urging the Court to interpret the contract contrary to the parties' intentions, and I think even in their papers, the defendants say, kind of consistently, that maybe the parties didn't realize that this language they were using would lead to this result, but I think even the parties don't dispute that the, even the movants don't dispute that the parties didn't intend the consequence urged by the movants. And so the non-movants are urging the Court to accept their interpretation despite the fact that it's contrary to the parties' intention and despite the fact that *their interpretation leads to what I would consider an absurd result*. . . .   So I understand and, you know, I appreciate intellectually the exercise you all went through to come to your interpretation, but I didn't see a case, and you can correct me if I'm wrong, where non-parties to a contract interpreted a contract contrary to the parties' intention and leading to a result that does not make any sense in the real world.

In sum, because Section 1.1's plain language conflicts with other provisions in the Agreement, as well as the general circumstances and intent surrounding its execution, the Settlement Agreement is ambiguous whether the unlisted child patents and applications, including the patents-in-suit, were transferred to eBay.

## V. Extrinsic Evidence Clearly Demonstrates the Parties Did Not Intend to Transfer the Patents-in-Suit

When there is uncertainty in the meaning and application of contract language, the reviewing court must consider the evidence offered in order to arrive at a proper interpretation of contractual terms. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012) (Where a contract is ambiguous, "the interpreting court *must* look beyond the language of the contract to ascertain the parties' intentions." (emphasis added) (internal quotation marks and citation omitted); *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810 (Del. Ch. 2007). These findings are reviewed with deference. *Honeywell Int'l Inc. v. Air Prods. & Chems., Inc.*, 872 A.2d 944, 950 (Del. 2005) ("To the extent the trial court's interpretation of the contract rests upon findings extrinsic to the contract, or upon inferences drawn from those findings, our review requires us to defer to the trial court's findings, unless the findings are not supported by the record or unless the inferences drawn from those findings are not the product of an orderly or logical deductive reasoning process."); *see also AT&T Corp. v. Lillis*, 970 A.2d 166, 169–70 (Del. 2009).

Though the district court found the Agreement unambiguous, it determined the parol evidence was "equivocal" and insufficient to establish standing. J.A. 15;

J.A. 3425–26 (emphases added).

*see also* J.A. 25 n.1 ("[T]he court ultimately found the parol evidence to be unpersuasive . . .."). This statement diverges from many of the district court's other statements, such as: "It strikes me that [] defendants' interpretations are leading us to a ludicrous result . . . ." J.A. 3425; "[t]heir interpretation leads to what I would consider an absurd result," *id.*; and "it is difficult for someone like me to resolve [this issue] in defendants' favor based solely on the language because it is such an incredible result." J.A. 3435.

The extrinsic evidence overwhelmingly supports Walker's position despite the district court's conclusion and Defendants' arguments to the contrary. As discussed above, both the no-pending litigation warranty as well as the first sentence of Section 1.1 in connection with Schedule A support Walker's position that the parties intended to transfer only those patents on Schedule A.

[[Another section of the Settlement Agreement also supports Walker's interpretation.]]

In accord with this section, Walker executed and delivered twenty-six short form assignments corresponding to the patents and applications listed in Schedule A. J.A. 6. [[Other actions Walker took conflict with the majority's interpretation.]] The parties simply did not intend to transfer those patents.

[[Communications prior to the execution of the Settlement Agreement also support Walker's position.]]

Communications after the execution of the Agreement further demonstrate Walker and eBay's intent that Schedule A be an exhaustive list. Upon informing eBay about the Defendants' motion to dismiss for lack of standing, eBay provided a letter stating: "[t]his confirms that eBay Inc. is not the owner of U.S. Patent Nos. 7,831,470 (09/219267) and 7,827,056 (11/423481)." J.A. 14. Furthermore, Mr. Tikku, Senior Patent Counsel at

eBay, provided a declaration stating eBay did not intend to transfer the patents.  J.A. 14.

[[Evidence supporting this assertion]]

Though eBay has neither asserted nor disclaimed ownership of the '359 patent, there is no compelling reason to treat it differently than the '470, '056, and '942 patents; it is not listed on Schedule A.  Mr. Tikku's testimony devastates the district court's finding that the extrinsic evidence was "equivocal" and "unpersuasive."

In sum, the extrinsic evidence resolves the ambiguity due to the conflicting provisions in the Agreement, and demonstrates that Walker and eBay did not intend to transfer all continuations, continuations-in-part, and related applications, including the patents-in-suit, to eBay.  Accordingly, I would find the district court abused its discretion.

## VI. To the Extent Walker Lacked Standing, the District Court Should Have Dismissed the Case without Prejudice

The majority determined the trial court "did not abuse its discretion when it imposed a dismissal with prejudice in this case [because] Walker had multiple opportunities to cure its Article III defect." Maj. Op. at 15.

In the Third Circuit, a dismissal with prejudice is a "severe and disfavored remedy." *Alvin v. Suzuki*, 227 F.3d 107, 122 (3d Cir. 2000).    Indeed, "the Third Circuit . . . as well as other regional circuit courts, have repeatedly emphasized that a dismissal for lack of standing should generally be without prejudice, *particularly when the defect is curable.*"  *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332 (Fed. Cir. 2009) (emphasis added); *see also H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) ("Because lack of standing is not an issue that goes

to the merits of the underlying patent issues, a dismissal of a complaint for lack of standing would not normally be expected to be made with prejudice."). As this court has recognized, "*the law universally disfavors dismissing an action with prejudice based on lack of standing*, and there is a strong presumption that such a dismissal is improper." *Univ. of Pittsburgh,* 569 F.3d and 1333 (emphasis added).

An important inquiry under the law is whether "the defect is curable." *Id.* at 1332. The district court's standing ruling did not extinguish any claims and was not an adjudication on the merits. *See Univ. of Pittsburgh,* 569 F.3d at 1332 (citing *Kasap v. Folger Nolan Fleming & Douglas, Inc.,* 166 F.3d 1243, 1248 (D.C. Cir. 1999)). Walker maintained it had "been and currently is engaged in continued discussion with eBay regarding ownership of the patents-in-suit," J.A. 26, but the court nonetheless found Walker had opportunities to fix the standing problem and failed to provide evidence "that it has a plan to cure," J.A. 26. [[Moreover, Walker had irrefutable proof of its rights.]]

The majority also focuses on the fact that Walker had multiple opportunities to cure the standing defect yet failed to do so. Maj. Op. at 15, 16. [[Walker provided evidence it attempted to cure.]] It was reasonable for Walker not to cure when the court, which had stated on record that Defendants' "interpretations are leading us to a ridiculous result," J.A. 3425, and initially dismissed the case *without* prejudice after finding Walker lacked standing. Additionally, the district court itself acknowledged:

> The motions to dismiss involved complex questions of law, with there being grounds for reasonable disagreement. With arguably valuable property rights at stake, it is not surprising that plaintiff choose to have the court resolve the

WALKER DIGITAL, LLC v. EXPEDIA, INC.                    15

dispute rather than amicably resolve such with defendants.

J.A. 25 (footnote omitted).  By dismissing Walker's claims with prejudice, the district court effectively punished Walker because it chose to have the district court resolve the standing issue rather than obtaining an assignment from eBay.  Because our law strongly disfavors dismissal with prejudice, and because the district court itself recognized the logic in Walker to "choos[ing] to have the court resolve the dispute," I would reverse the court's dismissal with prejudice.

## VII. Conclusion

Given Delaware law and that all provisions in the Agreement except for the second sentence of Section 1.1 reflect Walker's (and eBay's) understanding that only the patents listed in Schedule A were transferred, I would find the district court erred in finding no ambiguity.  Moreover, the extrinsic evidence clearly demonstrates the parties intended to transfer only the patents and applications listed on Schedule A.  For these reasons, I respectfully dissent.